E4SUYALP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA

4            v.                        12 CR 972(RMB)

5  TCHAMY YALA,

6              Defendant.

7  ------------------------------x

8                                      New York, N.Y.
                                       April 28, 2014
9                                      9:15 a.m.

10

11 Before:

12                  RICHARD M. BERMAN

13
                                       District Judge
14

15                   APPEARANCES

16 PREET BHARARA
        United States Attorney for the
17      Southern District of New York
   BY:  AIMEE HECTOR
18      Assistant United States Attorney

19 THE LAW OFFICES OF MA & PARK, PLLC
        Attorneys for Defendant
20 BY:  RICHARD JOHN MA

21

22 ALSO PRESENT
        Manuel Gomes
23      Walmor Gomes
          Guinea-Bissau Kriol Interpreters
24      Paula Gold, Interpreters Office

25

E4SUYALP

1        (Case called)

2        THE COURT:  Good morning, everybody.

3        Mr. Ma, I have a couple of documents I wanted to

4   mention and one is the document called advice of rights form.

5        First, let me make sure that Mr. Yala is able to

6   understand me with the help of the interpreter in the language

7   of Guinea-Bissau Kriol.

8        Can you understand with the interpreter, Mr. Yala?

9        THE DEFENDANT:  Yes.

10        THE COURT:  So I was saying that we have this advice

11   of rights form signed by Mr. Yala and Mr. Ma.  And, generally

12   speaking, it advises of certain rights and implications of

13   entering a plea of guilty.

14        And, Mr. Ma, I just want to make sure that you and

15   Mr. Yala each reviewed together this advice of rights form

16   before you each signed it?

17        MR. MA:  Appearing on behalf of Mr. Tchamy Yala,

18   Richard Ma.

19        Good morning, Judge.

20        Yes, I have reviewed the advice of rights form with

21   Mr. Yala and we did that just this morning.

22        THE COURT:  Mr. Yala, you went over this advice of

23   rights form with your attorney carefully before you signed it?

24        THE DEFENDANT:  Yes.

25        THE COURT:  There is also a document which is dated

E4SUYALP

1   April 18, 2014 on the first page, but also has been signed and

2   dated on the last page by Mr. Yala and Mr. Ma once again.  And

3   this is a plea agreement between the government and the defense

4   and I will discuss some features of it a little bit later on,

5   but at this point I just want to make sure that, Mr. Ma, once

6   again, that you and Mr. Yala carefully reviewed with each other

7   the terms of the plea agreement?

8          MR. MA:  That is correct, Judge.  We have thoroughly

9   reviewed it together.

10          THE COURT:  Mr. Yala, is that correct, that you and

11   your attorney carefully reviewed together this agreement

12   pursuant to which you are pleading guilty here today?

13          THE DEFENDANT:  Yes.

14          THE COURT:  So, Mr. Ma, it is obvious from these

15   documents particularly that Mr. Yala wishes to change his plea

16   on this matter, particularly to Count 1 of the superseding

17   indictment, from not guilty to guilty.  Is that also your

18   understanding of today's proceeding?

19          MR. MA:  Yes.  Actually, my understanding is that the

20   plea will be to a lesser included offense under the first count

21   of the indictment.

22          THE COURT:  So, Mr. Yala, before I can accept a guilty

23   plea, I am going to ask you a series of questions so that I can

24   establish to my satisfaction that you do wish to plead guilty

25   and that you do so voluntarily and knowingly and because you

E4SUYALP

1    are in fact guilty and also to establish just what rights you

2    will be giving up by pleading guilty.

3            So if you don't understand any of my questions or if

4    at any time you wish to consult with your attorney, Mr. Ma, for

5    any reason, please say so and I will give you as much time as

6    you need to consult with your attorney.  And the reason for

7    this is that it is essential to a valid plea that you

8    understand every question before you answer.

9            So I am going to ask you again at this time if you are

10   able to understand this proceeding with the help of the

11   Guinea-Bissau Kriol interpreter?

12           THE DEFENDANT:  Yes.

13           THE COURT:  So I am also going to ask Ms. Murray to

14   swear in Mr. Yala.

15           (Defendant sworn)

16           THE DEPUTY CLERK:  Thank you.

17           You may be seated.

18           THE COURT:  Mr. Yala, do you understand that now that

19   you are under oath, your answers to my questions must be

20   truthful and could subject you to the criminal penalties of

21   perjury for making a false statement if you do not answer

22   truthfully?

23           THE DEFENDANT:  Yes.

24           THE COURT:  So could you please tell us your full

25   name?

E4SUYALP

| | |
|---|---|
| 1 | THE DEFENDANT:  Yes.  My name is Tchamy and last |
| 2 | name -- and my first name -- is Yala. |
| 3 | THE COURT:  Is the first name Yala or the last name? |
| 4 | INTERPRETER M. GOMES:  Last name Yala. |
| 5 | THE COURT:  Mr. Yala, how old are you? |
| 6 | THE DEFENDANT:  42 years. |
| 7 | THE COURT:  And you are not a U.S. citizen? |
| 8 | THE DEFENDANT:  No. |
| 9 | THE COURT:  What country are you a citizen of? |
| 10 | THE DEFENDANT:  From Guinea-Bissau. |
| 11 | THE COURT:  How far did you go in school? |
| 12 | THE DEFENDANT:  Tenth grade. |
| 13 | THE COURT:  Where was that?  Was that in |
| 14 | Guinea-Bissau? |
| 15 | THE DEFENDANT:  In Guinea-Bissau. |
| 16 | THE COURT:  Are you now or have you recently been |
| 17 | under the care of a medical doctor? |
| 18 | THE DEFENDANT:  No, no. |
| 19 | THE COURT:  How about a mental health physician such |
| 20 | as a psychiatrist? |
| 21 | THE DEFENDANT:  No.  I am 100 percent OK. |
| 22 | THE COURT:  You have to speak a little louder, the |
| 23 | interpreter. |
| 24 | MS. GOLD:  May I have just one moment? |
| 25 | THE COURT:  Yes. |

6

E4SUYALP

1                (Pause)

2                THE COURT:  And the last thing you said was, I am 100

3    percent, is that right?

4                THE DEFENDANT:  Yes.  I am 100 percent OK in my mind.

5                THE COURT:  I will ask you again.

6                How is your physical health first?

7                THE DEFENDANT:  It is OK.

8                THE COURT:  And your mental health?

9                THE DEFENDANT:  Yes.

10               THE COURT:  Have you ever been addicted to drugs or to

11   alcohol?

12               THE DEFENDANT:  No, never in my life.

13               THE COURT:  Have you ever been hospitalized or treated

14   for any addictions?

15               THE DEFENDANT:  No.

16               THE COURT:  And have you had any drugs or medicine or

17   pills or alcoholic beverages in the past 24 hours?

18               THE DEFENDANT:  No, I didn't consume none of that.

19               THE COURT:  Anything that might affect your answers to

20   my questions here today?

21               THE DEFENDANT:  No, no, I'm fine.

22               THE COURT:  So I will ask again how you feel today,

23   first of all, physically?

24               THE DEFENDANT:  Yes, I'm OK.  I'm fine.

25               THE COURT:  And mentally?

E4SUYALP

1          THE DEFENDANT:  Yes, all OK.

2          THE COURT:  And you understand what we are doing here

3   in court today?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  And a question for the lawyers, do either

6   of you have any doubts or concerns as to Mr. Yala's competence

7   to plead at this time?

8          MS. HECTOR:  No, your Honor.

9          MR. MA:  No, Judge.

10         I just want to make one point.  With respect to the

11  question regarding Mr. Yala's education, his answer was tenth

12  grade.  I have no question as to his capacity to understand the

13  proceedings.

14         I will note because, this will be an issue at

15  sentence, in all likelihood, that the educational system in

16  Guinea-Bissau is different and so the tenth grade that Mr. Yala

17  indicated does not necessarily correspond to our understanding

18  of tenth grade as within the United States educational system.

19         THE COURT:  Is it higher or lower?

20         MR. MA:  I believe it is lower.

21         INTERPRETER M. GOMES:  It is lower.  It's lower.

22         THE COURT:  That is based upon the representation of

23  the interpreter.

24         Based upon my discussions with Mr. Yala, my

25  understanding is that it is lower.

E4SUYALP

1          But, again, I have no question as to Mr. Yala's

2     understanding of the proceedings and his voluntariness and

3     clarity today.

4          THE COURT:  Based on the record today, including

5     Mr. Yala's testimony, I find that he is competent to plead

6     guilty.

7          So, Mr. Yala, have you had an opportunity to discuss

8     all aspects of this case with your attorney?

9          THE DEFENDANT:  Yes, I did.

10          THE COURT:  Including any possible defenses that you

11     might have to the charges against you that are set forth in the

12     superseding indictment?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And are you fully satisfied with Mr. Ma's

15     legal representation of you?

16          THE DEFENDANT:  Yes, I am all right with that.

17          THE COURT:  Are you fully satisfied with the legal

18     advice that he is giving you?

19          THE DEFENDANT:  Yes, I am.

20          THE COURT:  So now, Mr. Yala, I am going to explain

21     certain rights that you have and ask some questions about

22     those.

23          First of all, do you understand that you have the

24     absolute right to plead not guilty today?

25          THE DEFENDANT:  Yes, I do understand that.

E4SUYALP

1          THE COURT:  And under the Constitution and laws of the

2     United States, if you plead not guilty, you would be entitled

3     to a speedy and public trial before a jury on the charges set

4     forth in the superseding indictment?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You realize that?

7          THE DEFENDANT:  Yes, I do understand that.

8          THE COURT:  And if you decided to have a trial, you

9     would at the trial be presumed to be innocent, the government

10    would have to prove that you were guilty and they could do so

11    by competent evidence, and beyond a reasonable doubt would be

12    their burden before you could be found guilty.  Do you realize

13    that?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  And in a trial, a jury would have to agree

16    unanimously that you were guilty before you could be found

17    guilty.  Do you understand that?

18         THE DEFENDANT:  I understand that.

19         THE COURT:  And you would not at a trial have to prove

20    that you were innocent.  Do you realize that?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  Also, at a trial, if you decided to have

23    one, and at every stage of your case, you would be entitled to

24    be represented by an attorney as you are today and have been

25    throughout these proceedings, and if you could not afford an

E4SUYALP

1  attorney, one would be appointed at public expense to represent

2  you.  Do you realize that?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  And, also, at a trial, if you decided to

5  have one, any witnesses for the government would have to come

6  to court and testify in your presence.  Your attorney, Mr. Ma,

7  could cross-examine those witnesses for the government, he

8  could object to any evidence offered by the government and he

9  could offer evidence and subpoena witnesses on your behalf.  Do

10  you understand those rights?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  Also, at a trial if you decided to have

13  one, although you would have the right to testify yourself if

14  you chose to do so, you would also have the right not to

15  testify and no one -- including the jury -- could draw any

16  inference or suggestion that you were guilty from the fact that

17  you did not testify, if that's what you chose to do.  Do you

18  realize that?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  And even now this morning as you are

21  entering this guilty plea, you still have the right to change

22  your mind and to plead not guilty and to go to trial on the

23  charges contained in the indictment in this case.  Do you

24  understand that?

25          THE DEFENDANT:  Yes, I do.

E4SUYALP

1          THE COURT:  If you do plead guilty and if I accept

2     your guilty plea, then you will be giving up your right to have

3     a trial and the other rights that I have been discussing with

4     you and there will be no trial, but I will still enter a

5     judgment of guilty against you.  Do you realize that?

6          THE DEFENDANT:  Yes, I understand.

7          THE COURT:  And I will thereafter -- not today, but

8     sometime in the future -- sentence you on the basis of your

9     guilty plea, after I receive what is called a presentence

10    investigation report and any submissions that I might get from

11    Mr. Ma and from the U.S. Attorney.  Do you understand that?

12         THE DEFENDANT:  Yes, I do.

13         THE COURT:  So the next question is whether you have

14    received and reviewed with Mr. Ma what is called the

15    superseding indictment in this case which contains the charges

16    against you?

17         THE DEFENDANT:  Yes, I did.

18         THE COURT:  Have you fully discussed with Mr. Ma those

19    charges in that indictment to which you intend to plead guilty?

20         THE DEFENDANT:  Yes, I did.

21         THE COURT:  So, in particular, while the indictment

22    charges or speaks of five kilograms and more of cocaine, the

23    government has agreed to accept a guilty plea to what is called

24    a lesser included offense.  Is that your understanding as well?

25         THE DEFENDANT:  Yes.

E4SUYALP

1          THE COURT:  Are you fully satisfied with Mr. Ma's

2     legal representation of you?

3          THE DEFENDANT:  Yes, I am.

4          THE COURT:  And are you fully satisfied with the legal

5     advice that he has given you?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Hold on one second.

8          (Pause)

9          THE COURT:  Mr. Yala, do you understand that you are

10    charged with what we call a felony offense, which is a serious

11    offense?

12          THE DEFENDANT:  Yes, I understand.

13          THE COURT:  In particular, I will just summarize Count

14    1 of the superseding indictment and then if counsel wish to add

15    anything to my summary, feel free to do it.  Actually, the

16    superseding indictment is incorporated here by me by reference,

17    so, really, the document speaks for itself.  But, in summary,

18    Count 1 says that from in or about August 2012 up until March

19    2013, Mr. Yala and others conspired to violate the narcotics

20    laws of the United States.

21          And while the indictment, as I mentioned before,

22    describes five kilograms and more of cocaine, the government,

23    as I understand it, is accepting or would accept a guilty plea

24    by Mr. Yala to the lesser included offense, participating in

25    this cocaine conspiracy but without specifying a particular

E4SUYALP

1    amount of cocaine.

2            I should also mention my understanding that venue for

3    the offense in the Southern District of New York,

4    notwithstanding that the crime was committed outside the

5    territorial jurisdiction of the United States, is accomplished

6    by virtue of Mr. Yala's entry into the United States in the

7    Southern District of New York.

8            And further to this summary, there is also an

9    agreement by Mr. Yala to acknowledge or admit to the forfeiture

10   allegation with respect to Count 1.

11           Did counsel wish to add to that summary?

12           MS. HECTOR:  I think that is satisfactory for the

13   government, your Honor.

14           THE COURT:  Mr. Ma?

15           MR. MA:  I have nothing to add, Judge.

16           THE COURT:  Thank you.

17           Now, Mr. Yala, we need to talk about and I will ask

18   you questions about the maximum possible sentence you could get

19   for participating in this crime; that doesn't mean that you

20   will get the maximum possible sentence, but you need to be

21   aware of what the maximum is before we can have a valid guilty

22   plea.  Do you understand that?

23           THE DEFENDANT:  Yes, I do.

24           THE COURT:  So do you understand that the maximum term

25   of imprisonment that you face is 20 years of incarceration?

E4SUYALP

1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  And do you understand that the maximum

3    term of supervised release which you face -- and supervised

4    release is the period of supervision after any possible term of

5    incarceration -- the maximum term of supervision that you face

6    is life supervision?

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  And do you also understand that the

9    mandatory minimum term of supervised release that you face for

10   this crime is three years of supervision?  Do you realize that?

11             THE DEFENDANT:  Yes, I do.

12             THE COURT:  And do you realize that the maximum fine

13   which could be imposed upon you for this crime is the greatest

14   of $1 million or twice the gross pecuniary gain derived from

15   this crime or twice the gross pecuniary loss to any person

16   other than yourself?  Do you realize that?

17             THE DEFENDANT:  Yes, I do.

18             THE COURT:  Also, do you realize that there will be a

19   $100 special assessment against you that you will have to pay?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that there is no parole

22   in the federal U.S. system, which is where we are?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And do you understand, as I mentioned very

25   briefly a minute or so ago, that in addition to any

E4SUYALP

1    incarceration, you could be subject to a period of supervision

2    following incarceration?

3              THE DEFENDANT:  Yes, I do.

4              THE COURT:  And with respect to supervision or

5    supervised release, we call it, you should be aware that there

6    would almost certainly be terms and conditions that would be

7    imposed, and that if you failed to comply with any of those

8    terms or conditions, you could, following a subsequent hearing,

9    be returned to prison?  Do you understand that?

10             THE DEFENDANT:  Yes, I do.

11             THE COURT:  And do you understand that if we had such

12   a hearing about whether or not you complied with the terms and

13   conditions of supervised release, that would be just before me

14   and there would be no jury involved?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  And, by the way, this subject that I am

17   about to raise with you, I am going to discuss in more detail

18   in a minute, but do you understand that because you are an

19   alien, not an American citizen, you are subject to being

20   deported from the United States following your conviction?

21             THE DEFENDANT:  Yes, I do.

22             THE COURT:  Are you serving any other sentences for

23   any other crimes?

24             THE DEFENDANT:  No.

25             THE COURT:  Are you being prosecuted in any other

E4SUYALP

1     courts for any other crimes?

2               THE DEFENDANT:  No.

3               THE COURT:  Let me talk a little bit about sentencing,

4     how we go about sentencing.  I am sure that Mr. Ma has

5     discussed this with you and will certainly discuss it in even

6     more detail as we get closer to sentencing, but I want to

7     mention some of the factors that I will be considering in

8     determining what is a fair and reasonable sentence in your

9     case.

10              So, first, I should tell you that what are called the

11    United States sentencing guidelines are no longer mandatory.

12    And what we do in determining or endeavoring to determine what

13    is a fair and reasonable sentence is to look to a law, United

14    States law referred to as 18, United States Code, Section

15    3553(a).  It tells us the guidelines or, rather, the criteria

16    or the factors that we are to consider in fashioning a

17    reasonable sentence, and those include the following.  They

18    include:

19              First, the nature and circumstances of the crime;

20              The history and characteristics of yourself;

21              And we try to accomplish these objectives:

22              One is to reflect the seriousness of the crime;

23              Two is to promote respect for the law;

24              Third is to provide a just punishment;

25              Another is to afford adequate deterrence to criminal

E4SUYALP

1    conduct;

2              Another is to protect the public from further crimes;

3              Another is to provide the defendant with needed

4    educational or vocational training or medical care or other

5    correctional treatment in the most effective manner.

6              And in doing all of that, what I will look at are the

7    kind of sentences that are available and the sentencing range

8    established in the United States sentencing guidelines -- even

9    though those, as I said before, are no longer mandatory.

10             I will look at any policy statements issued by the

11   United States Sentencing Commission that might apply to your

12   case.

13             I will seek to avoid unwarranted sentence disparities

14   or differences among similarly situated defendants.

15             And in an appropriate case -- I don't think this is a

16   restitution case -- but in an appropriate case, to provide for

17   restitution.

18             Mr. Ma, have you and Mr. Yala had these preliminary

19   discussions about sentencing?

20             MR. MA:  Yes, we have, Judge.

21             THE COURT:  So, Mr. Yala, do you understand what

22   factors and criteria will go into my sentencing of you?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  Do you realize that even if you don't like

25   the sentence that I impose, you would not be able for that

E4SUYALP

1    reason alone to withdraw today's guilty plea?

2              THE DEFENDANT:  Yes.

3              THE COURT:  So the plea agreement that I referred to

4    before, I believe it has a sentence in it that says that the

5    sentence to be imposed upon Mr. Yala is determined solely by

6    the Court.

7              So starting with the government, do counsel agree with

8    that idea?

9              MS. HECTOR:  Yes, your Honor.

10             MR. MA:  Yes.

11             THE COURT:  Mr. Yala, do you understand and agree with

12   that as well?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Let me ask you this sort of summary

15   question.  Do you believe that you understand the consequences

16   of pleading guilty here today?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Has anybody threatened you or forced you

19   to plead guilty?

20             THE DEFENDANT:  No.

21             THE COURT:  Including any attorneys?

22             THE DEFENDANT:  No.

23             THE COURT:  I referred to a couple of times, the plea

24   agreement in this case, and did you discuss that agreement

25   carefully with your attorney?

E4SUYALP

1          THE DEFENDANT:  Yes.

2          THE COURT:  And that is the April 18, 2014 agreement

3     which is signed on today's date on the last page?

4          THE DEFENDANT:  Yes.

5          THE COURT:  So that plea agreement, as all plea

6     agreements, is an agreement between the defense and the

7     government and it too speaks for itself in its entirety, but

8     there are some features of that plea agreement that I want to

9     go over now.

10          So one is that there is a provision in that agreement

11     that says that the parties agree or stipulate that the

12     sentencing guideline range for Mr. Yala's crime would be 210 to

13     262 months of incarceration.

14          So, Ms. Hector, did I get that right?

15          MS. HECTOR:  Yes, your Honor, you did.

16          THE COURT:  Mr. Ma?

17          MR. MA:  Yes, Judge.

18          THE COURT:  Mr. Yala, do you understand that?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  Also in that plea agreement is an

21     understanding what we call the offense level is 37 and the

22     criminal history category is I.

23          Again, Ms. Hector, is that right?

24          MS. HECTOR:  Yes, your Honor.

25          THE COURT:  And Mr. Ma?

E4SUYALP

1          MR. MA:  Yes.

2          THE COURT:  And do you understand that too, Mr. Yala?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  There is a further provision in the plea

5    agreement which says that both sides, that is to say, the

6    defense and the government, agree that what we call a downward

7    and upward departure, that neither of those is warranted here;

8    but both parties agree that either party may seek a sentence

9    that is outside the stipulated guideline range of 210 to 262

10   months based on those factors I described a few minutes ago

11   under 18, United States Code, Section 3553(a).

12          Ms. Hector, did I get that aspect of the plea

13   agreement correct?

14          MS. HECTOR:  Yes, your Honor.

15          THE COURT:  Mr. Ma?

16          MR. MA:  Yes.

17          THE COURT:  And, Mr. Yala, do you understand that?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  The plea agreement also contains a series

20   of waivers of certain rights, including a waiver of the right

21   to appeal in this case.  And, in particular, Mr. Yala, it

22   waives the right to file a direct appeal.

23          You also waive the right to bring what is called a

24   collateral attack or challenge, which includes an application

25   under what we call 28, United States Code, Sections 2255 and/or

E4SUYALP

1   2241.   These are the so-called habeas provisions.

2              Mr. Yala also waives his right to seek a sentence

3   modification pursuant to what we call 18, United States Code,

4   Section 3582(c) of any sentence that is within or below the

5   stipulated guideline range of 210 to 262 months of

6   incarceration.

7

8              (Continued on next page)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

E4s0

1          THE COURT:  So in other words, in summary, or even

2     more briefly stated, Mr. Yala waives all of his rights to

3     appeal this matter, if I were to sentence him within or below

4     210 to 262 months of incarceration.  Is that a fair summary?

5          MS. HECTOR:  Yes, your Honor.

6          MR. MA:  Do you understand your waiver of your rights

7     to appeal this matter, Mr. Yala.

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  There are other waivers of appeal rights.

10    I'm not going to go into all of them at this time, this was the

11    most important.  But there are others that relate to supervised

12    release and, also, to the fine that might be imposed.

13          There is also a waiver of the right to appeal based on

14    actual or perceived adverse immigration consequences, including

15    deportation.  Those are in the plea agreement.  But I'm not

16    going summarize them all at this time.  There is one other

17    provision of the plea agreement that I wanted to make sure that

18    we talk about.  And that is that, in the plea agreement, Mr.

19    Yala agrees to the entry of a judicial order, by judicial

20    order, agreeing to removal from the United States pursuant to a

21    statute callid United States Code Section 1228(c)(5) and 1182.

22    And he also agrees to assist the U.S. Immigration authorities

23    in executing his -- executing, fulfilling his removal from the

24    United States.

25          And he acknowledges, as he has done already, that he

E4s0

1    is not a native and citizen of Guinea-Bissau, and he also

2    waives all of his rights to any and all forms of relief or

3    protection from removal or deportation or exclusion from the

4    United States.

5            MS. HECTOR:  Your Honor --

6            THE COURT:  Yeah.

7            MS. HECTOR:  If I just may, because I noticed a small

8    typo on page 5 that I want to correct for --

9            THE COURT:  Page 5 of the?

10           MS. HECTOR:  Plea agreement.

11           THE COURT:  Yup.

12           MS. HECTOR:  In the third full paragraph towards the

13   end, it refers to a present fear of persecution in Toga,

14   Liberia.  It should be Guinea-Bissau.

15           THE COURT:  So on page 5.

16           MS. HECTOR:  Third full paragraph, towards the very

17   end of that paragraph:  As part of this agreement, the

18   defendant waives any right to claim that he was persecuted in,

19   or has a present fear of, persecution in -- it should be Guinea

20   Bissau.

21           THE COURT:  It is in my copy.

22           MS. HECTOR:  I must have an old -- I'm sorry, I am

23   looking at an old copy.  I thought I had corrected that,

24   actually, so.

25           THE COURT:  In the agreement that has been signed, it

E4s0

```
 1   does, in that paragraph, refer to Guinea-Bissau.
 2             MS. HECTOR:  Okay, thank you.
 3             THE COURT:  So did I adequately describe, in summary
 4   form, the removal commitment in the plea agreement?
 5             THE DEFENDANT:  Yes, your Honor.
 6             THE COURT:  Mr. Ma?
 7             MR. MA:  Yes, Judge.
 8             THE COURT:  And, Mr. Yala, you understand that you
 9   have agreed, as I have described it, to being removed from the
10   United States?
11             THE DEFENDANT:  Yes.
12             THE COURT:  Has anyone made any promise to you to
13   cause you to plead guilty today, apart from what is contained
14   in the plea agreement?
15             THE DEFENDANT:  I decided by myself.
16             THE COURT:  And has anybody made any promise to you as
17   to what the sentence will be in this case?
18             THE DEFENDANT:  No.
19             THE COURT:  Including any attorneys?
20             THE DEFENDANT:  Yes.
21             THE COURT:  Right, okay.  And by, yes, he means no
22   attorneys?
23             THE DEFENDANT:  No attorneys; yes.
24             THE COURT:  Right, got it.
25             Ms. Hector, could you tell us in summary, if this case
```

E4s0

```
 1   were to go to trial, instead of being resolved here today, what
 2   you feel the government would be able to prove?
 3            MS. HECTOR:  Yes, your Honor.  Through recorded
 4   meetings, e-mails, witness testimony, the government would
 5   prove that between August 2012 and April 2013 the defendant
 6   agreed with others to receive cocaine in Guinea Bissau, that
 7   was coming from South America, to store it there in
 8   Guinea-Bissau for later transport to, among other places, the
 9   United States.
10            THE COURT:  So, now back to you, Mr. Yala.
11            Having listened to what the government has to say just
12   now, and in view of the questions and the answers to my
13   questions this morning before this point, at this time, do you
14   wish to plead guilty or not guilty to the conspiracy set forth
15   in the superseding indictment?
16            THE DEFENDANT:  I'm pleading guilty.
17            THE COURT:  And so tell me then in your own words what
18   it is that you did that makes you believe that you are guilty
19   of conspiracy to import cocaine into the United States.
20            THE DEFENDANT:  Accepted, with group of other people
21   to conspire and bring drugs to the U S.
22            THE COURT:  And, so, you -- you agreed with other
23   people to do that?
24            THE DEFENDANT:  Yes, I did.
25            THE COURT:  And what drugs, in particular, are you
```

E4s0

1    talking about?

2              THE DEFENDANT:  Cocaine.

3              THE COURT:  And what time period, approximately, did

4    you participate in this conspiracy?

5              THE DEFENDANT:  August 1st, 2012.

6              THE COURT:  Until?

7              THE DEFENDANT:  Until 2013.  I think end of March,

8    2013.

9              THE COURT:  And you knew about this agreement with

10   other people -- these other people in Guinea.

11             THE DEFENDANT:  Yes.

12             THE COURT:  You knew that this agreement to send

13   cocaine to, among other places, the United States, you knew

14   that was illegal, I'm sure.

15             THE DEFENDANT:  Yes.

16             THE COURT:  And are you pleading guilty to this

17   conspiracy crime because you are, in fact, guilty of it?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And does the government attorney agree

20   that there is a sufficient factual predicate for today's guilty

21   plea?

22             MS. HECTOR:  Yes, your Honor.

23             THE COURT:  And how about Mr. Ma?

24             MR. MA:  Yes, Judge.

25             THE COURT:  So do I.  And it is the finding of this

E4s0

1   Court in this matter, U.S. versus Tchamy Yala, that Mr. Yala is

2   fully competent and capable of entering an informed plea.  And

3   that he is aware of the nature of the charges against him, and

4   also of the consequences of pleading guilty.

5          I'm also convinced that his plea of guilty is a

6   knowing and voluntary plea, which is supported by an

7   independent basis in fact supporting each of the essential

8   elements of the offense or the crime charged against him.

9          It is the further finding of the Court that Mr. Yala

10  is fully aware of the potential consequences that result from

11  his waiving his appeal rights, both direct appeal and

12  collateral appeals, and that he has also voluntarily and

13  knowingly waived those rights both in the plea agreement and

14  during today's plea allocution.

15         And so the plea is therefore accepted.

16         And Mr. Yala, is now adjudged guilty of the cocaine

17  conspiracy set forth in count one of the superseding

18  indictment.

19         So, counsel, is there any reason why I should not

20  direct that a presentence report be prepared?

21         MS. HECTOR:  No, your Honor.

22         MR. MA:  No.

23         THE COURT:  So I hereby direct that there be a

24  presentence report.

25         And Mr. Ma, do you want to be present for any

E4s0

1   interview in connection with that report?

2              MR. MA:  Yes.

3              THE COURT:  So I hereby, not only order that the

4   presentence report be made, but that there be no interview of

5   Mr. Yala unless Mr. Ma is given the opportunity to be present.

6              Mr. Yala, it is my suggestion that you cooperate with

7   the probation department, who prepare what's call the

8   presentence report.  And the reason for that is that that

9   report will be very important in my decision as to what your

10  sentence will be in the case.

11             So I suggest you tell them whatever they ask,

12  consulting with your attorney.  Both the good things and the

13  not so good things.  Because if you don't disclose something

14  that they ask about, and if they were to find it out

15  themselves, they might say that you were not being truthful,

16  and that would not be helpful to you.

17             Do you understand that?

18             THE DEFENDANT:  Yes, I do.

19             THE COURT:  So you and your attorney and the

20  government will have the right and the opportunity to examine

21  this presentence report before the sentencing date, and to file

22  any objections that you might have.  So I urge you to review

23  that report carefully, with your attorney, and to discuss it

24  with your attorney before sentencing.  And if there are any

25  mistakes in the report, I urge you to point them out to Mr. Ma

E4s0

1    so that he can point them out to me before the sentencing, and

2    so that I don't proceed on the basis of mistaken information.

3           So I was going to propose to you a sentencing on

4    September 4th, 2014.

5           Does that work for you?

6           MS. HECTOR:  That's fine, your Honor.

7           THE COURT:  Counsel, is that okay with you?

8           MR. MA:  That's fine, Judge.

9           THE COURT:  And let's say then at 11:00 a.m. on that

10   date.  And then we would want all the -- any and all sentencing

11   submissions, including any letters, if there are to be any,

12   filed with the clerk and sent to opposing counsel, and me of

13   course, by August 13th, 2014.  That it would be the defense, by

14   August 13, 2014, and if there are any government responses, by

15   August 20, 2014.  If that works for all of you.

16          So, let me conclude by asking, first the government,

17   if you wish to add anything to today's sentencing proceeding.

18          MS. HECTOR:  No, your Honor.

19          THE COURT:  How about defense?

20          MR. MA:  No, Judge.

21          THE COURT:  And Ms. Hector, are you satisfied with

22   today's plea allocution?

23          MS. HECTOR:  Yes, your Honor, I am.

24          THE COURT:  And Mr. Ma, are you, as well?

25          MR. MA:  Yes.

E4s0

1            THE COURT:  Okay.  I think, then, that finishes our

2      work for today.

3            So I summarized -- one more question.  I summarized

4      before, when I was describing count one, the basis for venue in

5      the United States.  And I just want to make sure that we focus

6      on that, and that there is no defense objection to venue in

7      this jurisdiction.

8            MR. MA:  No, Judge.

9            MS. HECTOR:  And your Honor, your description was an

10     accurate recitation of the basis for venue here.

11           THE COURT:  Okay.  All right, then, I think that

12     concludes our work for today.  And I'll see you, if not before,

13     in September.

14           MS. HECTOR:  Thank you.

15           MR. MA:  Yup.

16           (Adjourned)

17

18

19

20

21

22

23

24

25